ORIGINAL

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

LOY CARTER, GEOFF BURKHART,           )
HEATHER YOUNG and                     )
DEBORAH ROBINSON on behalf            )
of themselves and all others similarly )
situated,                             )
                                      )          Civil Cause No. 3-01CV1182-M
        Plaintiffs,                   )
                                      )
vs.                                   )
                                      )
COUNTRYWIDE CREDIT INDUSTRIES, )
INC., COUNTRYWIDE HOME LOANS,  )
INC., and FULL SPECTRUM LENDING, )
INC.,                                 )
                                      )
        Defendants.                   )
                                      )

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC − 5 2001

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS OR IN THE ALTERNATIVE FOR
ORDER STAYING PROCEEDINGS PENDING ARBITRATION**

41

Civil Cause No. 3-01CV1182-M

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii
    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        PLAINTIFFS' FLSA CLAIMS ARE NOT SUBJECT TO COMPELLED
            ARBITRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            History of the FLSA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            *Barrentine* Recognized a Non-Waivable Right to a Judicial Forum for
                Claims Brought Under the FLSA. . . . . . . . . . . . . . . . . . . . . . . . . . 5
            The Fifth Circuit has Recognized the Non-Waivable Nature of an FLSA
                Plaintiff's Right to a Judicial Forum. . . . . . . . . . . . . . . . . . . . . . 8
            The *Gilmer* Decision is Irrelevant to the Court's Determination Here. . . . 9
        THE COURT MUST PROVIDE THE CLASS OF SIMILARLY SITUATED
            EMPLOYEES WITH NOTICE BEFORE DETERMINING WHETHER
            THE PLAINTIFFS MUST ARBITRATE THEIR CLAIMS . . . . . . . . 11
      DEFENDANTS' ARBITRATION AGREEMENT ATTEMPTS TO DEPRIVE
            PLAINTIFFS OF SUBSTANTIVE RIGHTS PROVIDED BY THE FLSA
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            Plaintiffs' Rights to Proceed Collectively Cannot be Waived. . . . . . . . . 14
            The Arbitration Agreement does not Mandate an Award of Attorney's Fees
                and Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            Defendants' Arbitration Agreement Denies Plaintiffs the Damages to which
                they Are Entitled Under the FLSA. . . . . . . . . . . . . . . . . . . . . . . . 20
            Defendants' Discovery Procedures Limit the Plaintiffs' Ability to Pursue
                their Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            Defendants Fraudulently Induced the Plaintiffs Into Signing the Arbitration
                Agreement by Representing that Plaintiffs Were Not Waiving Any of
                Their Substantive Rights.
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

Civil Cause No. 3-01CV1182-M

# TABLE OF AUTHORITIES

Articles

*As Mandatory Binding Arbitration Meets the Class Action, Will the Class Action Survive?*, 42 Wm
& Mary L. Rev. 1, 14 (2000).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cases

*Abendschein v. Montgomery County, Md.*, 984 F.Supp. 356 (D.Md.1997).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643 (1986).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4-8, 10, 13, 16, 17, 24

*Bernard v. IBP, Inc.*, 154 F.3d 259 (5th Cir. 1998).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16, 20

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Brooks v. Village of Ridgefield Park*, 185 F.3d 130 (3rd Cir. 1999).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bullington v. Fayette County School Dist.*, 540 S.E.2d 664 (Ga. App. 2000).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500 (11th Cir.1993).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Castillo v. Case Farms of Ohio, Inc.*, 96 F.Supp.2d 578 (W.D. Tx.1999).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cole v. Burns Int'l Security Services*, 105 F.3d 1465 (D.C. Cir. 1987).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 21

Civil Cause No. 3-01CV1182-M

*D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946).
............................................................................................. 5

*Dallas Cardiology Associates, P.A. v. Mallick*, 978 S.W.2d 209 (Tex.App.-Texarkana 1998, pet.denied.).
............................................................................................. 4

*Doctor's Associates, Inc. v. Casarotta*, 517 U.S. 681, 687, 116 S.Ct. 1652, 1686 (1996)
............................................................................................. 22

*Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000).
............................................................................................. 14

*Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir.1995)
............................................................................................. 4

*Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F.Supp. 2d at 985 (S.D. Ind. 2001).
............................................................................................. 21, 22

*Giles v. City of New York*, 41 F. Supp. 2d 308 (S.D. N.Y. 1999).
............................................................................................. 9

*Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20 (1991).
............................................................................................. 9-11, 13, 14, 21

*Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244 (9th Cir. 1994)
............................................................................................. 21

*Green Tree Financial Corp. - Alabama v. Randolph*, 531 U.S. 79 (2000).
............................................................................................. 17-19

*Hampton v. ITT Corporation*, 829 F.Supp 202 (S.D. Tex-Houston 1993).
............................................................................................. 8

*Haynsworth v. Lloyd's of London, et al.*, 933 F.Supp. 1315 (S.D. Tx. 1996)
............................................................................................. 22

*Hooters of America, Inc. v. Philips*, 39 F.Supp. 2d 582 (D.S.C. 1988).
............................................................................................. 21

*In re: Oakwood Mobile Homes, Inc.*, 987 S.W. 2d 571, 573-73 (Tx. 1999)
............................................................................................. 23

Civil Cause No. 3-01CV1182-M

*Jackson v. G-Tane Services, Inc.*, 2001 WL 826867 (N.D. Ill.).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jones v. Fujitsu Network Communications, Inc.*, 81 F.Supp.2d 688 (N.D. Tx. 1999).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Louis v. Geneva Enterprises, Inc.*, 128 F. Supp 2d 912 (E.D. Va. 2000).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McComb v. Farmers Reservoir & Irr. Co.,* 167 F.2d 911 (10th Cir.1948), *aff'd.,* 337 U.S.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McDonald v. City of West Branch*, 466 US 284 (1984).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, Inc.,* 473 U.S. 614 (1985).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Moss v. Crawford & Company* 201 F.R.D. 398 (W.D. Pa. 2000).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Newman v. Countrywide Home Loans*, 2001 WL 1148943 (N.D. Tx. September 20, 2001).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11-14, 24

*NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S.175 (1967).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir. 1998).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Parklane Hosiery Company v. Shore*, 439 U.S. 322 (1979).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Schwertfeger v. Village of Sauk Village*, 2001 WL 293115 (N.D. Ill.).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Civil Cause No. 3-01CV1182-M

*Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*Sun Towers v. Heckler*, 725 F.2d 315 (5th Cir. 1984).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tran v. Tran*, 54 F.3d 115 (2nd Cir. 1995).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37 (1944).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Walton V. United Consumers Club, Inc.*,786 F.2d 303 (7th Cir. 1986).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Webb v. Investacorp, Inc.*, 89 F.3d 252 (5th Cir.1996).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Williams v. Cigna Financial Advisors,* 197 F.3d 752 (5th Cir. 1999).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9


Congressional Record

81 Cong.Rec. 4983 (1937) (message of President Roosevelt)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


Federal Codes

29 CFR 785.8 (1974)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


Statutes

Age Discrimination in Employment Act - 29 U.S.C. §621 et seq.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fair Labor Standards Act - 29 U.S.C. §201 et seq.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

v

Civil Cause No. 3-01CV1182-M

COME NOW Plaintiffs, LOY CARTER, GEOFF BURKHART, HEATHER YOUNG and

DEBORAH ROBINSON (collectively referred to as "Plaintiffs"), on behalf of themselves and all

others similarly situated, by and through their undersigned counsel and hereby file their Response

to Defendants' Motion to Dismiss or in the Alternative for Order Staying Proceedings Pending

Arbitration.

## I. **INTRODUCTION**

For years Defendants have exerted enormous efforts, and employed a variety of means, in

order to avoid paying Plaintiffs the overtime compensation to which the law says they are entitled.

Indeed, the Department of Labor ("DOL") has found, on more than one occasion, that the precise

employees at issue here are, and continue to be, improperly classified as exempt from the overtime

provisions of the Fair Labor Standards Act, 29 U.S.C. 201, et seq., (hereinafter referred to as

"FLSA"). *See* Department of Labor narratives and correspondence (Appendix A at 1-22). Now, by

their Motion to Dismiss or in the Alternative for Order Staying Proceedings Pending Arbitration

("Defendants' Motion" cited herein as "Defs. Mot. at ___"), Defendants attempt to improperly

utilize this Court serve to that same improper end. It is the intent of Defendants, in contradiction of

Fifth Circuit precedent, to send these FLSA claims to arbitration. Moreover, it is Defendants intent

to send these claims to a forum, chosen by Defendants, which by the very term of its' own

procedure, deprives plaintiffs of important statutory rights. *See*, National Arbitration Forum

("NAF") Code of Procedure (Appendix B at 1-54). Indeed, history affirms, that Defendants' chosen

forum will in fact deprive Plaintiffs of those rights. *See*, NAF Arbitrator's Order of March 27, 2001

(Appendix C at 1-2).

## II. **ARGUMENT**

1

Civil Cause No. 3-01CV1182-M

At issue here is not whether the FAA makes arbitration agreements in most contracts enforceable; or even whether some arbitration agreements in some employment contracts are enforceable (Def. Mot at 2). The only question here is whether the Arbitration Agreement is a valid, enforceable contract that, under Fifth Circuit precedent, can compel all or part of this collective action FLSA lawsuit to arbitration. The answer is no.

Defendants' apparently concede that *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728 (1981) prohibits a defendant from enforcing an arbitration agreement to compel a plaintiff's FLSA claims to arbitration, but argue that this prohibition is limited to arbitration agreements derived from the collective bargaining process, and "is inapplicable to the arbitrability of individually executed pre-dispute arbitration agreements covering ... the FLSA claims presented in this case." (Defs. Mot. at 8). However, neither *Barrentine* nor its Fifth Circuit progeny espouse such a limitation. Moreover, Defendants' position that those employees who are a party to a collective bargaining agreement are somehow <u>more</u> deserving of the protections provided by the FLSA than those who are not a part of the collective bargaining process flies in the face of logic, and is contrary to the specific language of *Barrentine*.

Even were such a limitation to exist, the arbitration agreement at issue here could not be enforced because it fails to provide effective vindication of Plaintiffs' statutory claims by denying important substantive rights. Alternatively, to the extent Defendants attempt to argue that those substantive rights have been waived, the arbitration agreement should be declared voidable as fraudulently induced.

Finally, as Defendants are aware, this Court should not make a decision regarding the arbitrability of Plaintiffs' claims at this stage of the litigation. *See,* Newman *v. Countrywide Home*

Civil Cause No. 3-01CV1182-M

*Loans*, No. 3-00-CV-2305-R 2001 WL 148943 (N.D. Tx. September 20, 2001). In *Newman*, Chief

Judge Buchmeyer found that the potential opt-in plaintiffs, all of which are potential opt-in plaintiffs

here, were similarly situated to the *Newman* plaintiffs, who again, held the same position as Plaintiffs

here. After finding that the similarly situated standard was met, Judge Buchmeyer held that the

potential opt-in plaintiffs should be notified of, and given the opportunity to join, the pending

lawsuit. Finally, Judge Buchmeyer determined that the fact that some, and according to

Countrywide most, of the potential opt-in plaintiffs may have signed arbitration agreements was not

sufficient reason to deny notification.[1]   Given Judge Buchmeyer's ruling in *Newman*, Defendant

Countrywide, is collaterally estopped from arguing that notice is inappropriate here. Alternatively,

this Court should give great weight to the precedential value of Judge Buchmeyer's decision and

deny Defendants' Motion to Dismiss or Compel Arbitration.

A.   **PLAINTIFFS' FLSA CLAIMS ARE NOT SUBJECT TO COMPELLED ARBITRATION**

The decision as to whether a claim can be compelled to arbitration is within the discretion

of the trial Court, not the arbitrator. That is, "a party cannot be forced to arbitrate the arbitrability

question." *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 648

(1986). The party seeking arbitration has the initial burden of establishing that a valid arbitration

agreement covering the asserted claims exists. *Dallas Cardiology Associates, P.A. v. Mallick*, 978

S.W.2d 209, 212 (Tex.App.-Texarkana 1998, pet.denied.). Even if a defendant can establish that

there is a valid agreement to arbitrate, (*see*, *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d

---

[1]    Ultimately, the Account Executives were not provided notice of the *Newman* suit
because Countrywide settled with the *Newman* plaintiffs before notice was sent.

3

Civil Cause No. 3-01CV1182-M

603, 605 (5th Cir.1995)), and that the dispute in question falls within the scope of the agreement,

*(see, Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir.1996)), the court must then determine

whether there is some reason why the agreement should not be enforced in that particular instance.

*See, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985).* Here, as

recognized by the Supreme Court in both the remedial nature of the FLSA and the statutory scheme

support the conclusion that Congress intended to guarantee a judicial forum to one injured by a

violation of the FLSA.

### 1.    History of the FLSA.

The FLSA was passed by Congress in 1938 in an attempt to eliminate low wages and long

hours and to correct conditions that were detrimental to the health and well-being of workers. *See*

*Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947). As stated by the Court in *Barrentine*:

> The principal congressional purpose in enacting the Fair Labor Standards Act of
> 1938 was to protect all covered workers from substandard wages and oppressive
> working hours, "labor conditions [that are] detrimental to the maintenance of the
> minimum standard of living necessary for health, efficiency and general well-being
> of workers." 29 U.S.C. 202(a) ... the FLSA was designed to give specific minimum
> protections to *individual* workers and to ensure that *each* employee covered by the
> Act would receive " '[a] fair day's pay for a fair day's work' "and would be protected
> from "he evil of 'overwork' as well as 'underpay.' "

*Id.* at 739, (citing *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 578 (1942), quoting

81 Cong.Rec. 4983 (1937) message of President Roosevelt)) (emphasis in original).

The purpose of the FLSA is thus remedial, and courts have long held that in light of its

humanitarian intent, the FLSA's coverage should be construed liberally. *See, e.g., McComb v.*

*Farmers Reservoir & Irr. Co.,* 167 F.2d 911 (10th Cir.1948); *Castillo v. Case Farms of Ohio, Inc.,*

96 F. Supp. 2d 578 (W.D. Tx. 1999), (citing *Caro-Galvan v. Curtis Richardson, Inc.,* 993 F.2d 1500,

4

Civil Cause No. 3-01CV1182-M

1505 (11th Cir.1993) (Remedial statutes, such as the FLSA "should be construed broadly to effect

its humanitarian purpose."). Accordingly, the Supreme Court and the courts of the Fifth Circuit have

held that FLSA rights cannot be abridged by contract or otherwise waived because this would

"nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate.

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *see, Overnight Motor Transportation*

*Co. v. Missel, supra*, at 577; 29 CFR 785.8 (1974); *D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-

116 (1946); *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42 (1944). It was upon this premise

that the Supreme Court decided *Barrentine*.

> **2.      *Barrentine* Recognized a Non-Waivable Right to a Judicial Forum for**
> **Claims Brought Under the FLSA.**

In *Barrentine* the Supreme Court found a legislated right to have a court of competent

jurisdiction hear an employee's FLSA claim. In so doing, the Court stated:

> This Court's decisions interpreting the FLSA have frequently emphasized the
> nonwaivable nature of an individual employee's right to a minimum wage and to
> overtime pay under the Act. Thus we have held that ***FLSA rights cannot be***
> ***abridged by contract or otherwise waived*** because this would nullify the purposes
> of the statute and thwart the legislative policies it was designed to effectuate . . . "

*Id.* at 740. The *Barrentine* court went on to hold:

> In sum, the FLSA rights petitioners seek to assert in this action are independent of
> the collective-bargaining process. They devolve on petitioners as individual workers,
> not as members of a collective organization. ***They are not waivable. Because***
> ***Congress intended to give individual employees the right to bring their minimum-***
> ***wage claims under the FLSA in court, and because these congressionally granted***
> ***FLSA rights are best protected in a judicial rather than in an arbitral forum***, we
> hold that petitioners' claim is not barred by the prior submission of their grievances
> to the contractual dispute- resolution procedures.

*Id.* As explained by the Supreme Court in *McDonald v. City of West Branch*, 466 US 284 (1984),

the *Barrentine* decision did not rest on the presence of a collective bargaining agreement but was:

Civil Cause No. 3-01CV1182-M

based in large part on [its] conclusion that Congress intended ... [FLSA] cases to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes.

*McDonald,* at 289.

Relying on *Barrentine,* a number of circuits have recognized that a plaintiff who has been injured by a violation of the FLSA has a statutory right to have his case heard in court. *Tran v. Tran,* 54 F.3d 115, 118 (2nd Cir. 1995); *Brooks v. Village of Ridgefield Park,* 185 F.3d 130 (3rd Cir. 1999) (The nonwaivable nature of the provisions of the FLSA is well-settled, even if obtained by negotiations for a collective bargaining agreement); *Abendschein v. Montgomery County, Md.,* 984 F.Supp. 356 (D.Md.1997) (Fourth Circuit policy favoring arbitration "does not apply to the FLSA"); *Schwertfeger v. Village of Sauk Village,* 2001 WL 293115 (N.D. Ill.) (*Barrentine* protects the employee's congressionally-granted right to seek redress through the FLSA in court). Indeed, so protected are an employee's rights under the FLSA that even a settlement negotiated by the DOL may not waive an employee's right to sue. *Bullington v. Fayette County School Dist.,* 540 S.E.2d 664 (Ga. App. 2000); *Jackson v. G-Tane Services, Inc.,* Case No. 2001 WL 826867 (N.D. Ill. 2001).

Defendants' argue to the contrary, *Barrentine* is equally applicable to arbitration agreements executed by individuals as to those that are the result of the collective bargaining process. Indeed, Defendants' apparent argument that those employees who are protected by unions and the collectively bargaining process deserve *more* protection than individual employees flies in the face of logic and defies the very purpose of both union activity and the FLSA. As the Supreme Court stated in *NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175 (1967), collective bargaining is predicated on the assumption that individual workers have little, if any, bargaining power and that "pooling

6

Civil Cause No. 3-01CV1182-M

their economic strength . . . the employees . . . have the most effective means of bargaining for improvements in wages, hours and working conditions." *Id.* at 180. "The principal congressional purpose in enacting the [FLSA] was to protect *all* covered workers from substandard wages and oppressive working hours." *Barrentine* at 739. Clearly, and as stated in *Barrentine*, the FLSA was not intended to protect only those workers already protected by collective bargaining, but was intended to "give specific minimum protections to *individual* workers." *Id.* (Emphasis in original).

Indeed the precise argument made by Defendants here was made by the defendants in *Louis v. Geneva Enterprises, Inc.*, 128 F. Supp. 2d 912 (E.D. Va. 2000). The *Louis* court rejected the defendants' arguments and found that "[u]nder *Barrentine* the Supreme Court create[d] an FLSA exception to the general rule that agreements to arbitrate should be enforced as a waiver abridging a plaintiffs' right to file a claim in court." *Id.* at 916. The court went on to hold that "such agreement does not preclude plaintiff from filing his FLSA claim in a District Court" and that "Plaintiff has a right to have his [FLSA] claim heard in court in spite of the language within the agreement." *Id.* at 916-917. As did the plaintiffs in *Louis*, Plaintiffs here have a right to have their FLSA claims heard in court.

### 3.   The Fifth Circuit has Recognized the Non-Waivable Nature of an FLSA Plaintiff's Right to a Judicial Forum.

The right to a judicial forum in FLSA cases was recognized in the Fifth Circuit in *Bernard v. IBP, Inc.*, 154 F.3d 259 (5th Cir. 1998). In *Bernard*, IBP argued, precisely as Defendants do here, that the district court should have dismissed plaintiffs' FLSA suit because the parties entered into an arbitration agreement. *Id.* at 263. Judge Wisdom, quoting *Barrentine*, 450 U.S. at 740,

7

Civil Cause No. 3-01CV1182-M

unequivocally rejected *IBP's* argument.[2] Moreover, Defendants assertion that the "Fifth Circuit has

not had occasion to consider whether an employee's FLSA claims are subjected to arbitration

pursuant to an arbitration agreement executed by the employees" conveniently ignores the language

in *Williams v. Cigna Financial Advisors,* 197 F.3d 752 (5th Cir. 1999), that does precisely that.

Specifically, the *Williams* court stated:

> Employees, as individuals, are protected by a wide variety of rights created by federal
> statutes. These include Title VII, which *protects* individuals against discrimination
> in employment and seeks to assure equal employment opportunities; the Fair Labor
> Standards Act (FLSA) *which provides employees with a judicial remedy in the*
> *federal courts* to enforce the statutory right to minimum wages and overtime pay
> claims against employers; and the ADEA, which *protects* employees 40 years of age
> or older who are fired or discriminated against because of age.

*Id.* at 758 (emphasis added). Thus, the Fifth Circuit is among those circuits to have recognized that

the FLSA "provides employees with a judicial remedy in the federal courts . . . ."

### 4.    The *Gilmer* Decision is Irrelevant to the Court's Determination Here.

Without Fifth Circuit law to aid them, Defendants turn to *Gilmer v. Interstate/Johnson Lane*

*Corporation,* 500 U.S. 20 (1991). According to Defendants, *Gilmer* stands for the proposition that

all individually negotiated arbitration agreements are effective to compel arbitration of any statutory

claim. Neither the letter or spirit of *Gilmer* supports this conclusion.

As an initial matter, the express language of *Gilmer,* limits its holding to the arbitrability of

claims under the ADEA, and also reaffirms that other statutory claims may not be "appropriate for

---

2    Defendants cite *Hampton v. ITT Corporation,* 829 F. Supp. 202 (S.D. Tex. 1993) for
the proposition that FLSA claims can be compelled to arbitration. However, *Hampton* was decided
before *Bernard,* which refused to compel FLSA claims to arbitration and before *Williams* which
recognized an FLSA plaintiff's right to a judicial forum.

Civil Cause No. 3-01CV1182-M

arbitration." *Id.* at 26. The self imposed limitation on the scope of *Gilmer* has been recognized by

the Fifth Circuit, as well as by other Courts. As was stated by the court in *Williams*:

> In other words, the *Gilmer* Court anticipated that an employee's prospective waiver
> to the right to a court's decision about the merits of his or her future ***ADEA or Title***
> ***VII disputes*** would not have the effect that it does in ordinary commercial arbitration
> – relinquishment [of] much of that right's practical value.

*Williams* 197 F.3d. at 761.    Similarly, the court in *Giles v. City of New York*, 41 F. Supp. 2d 308

(S.D. N.Y. 1999), recognized that while *Gilmer* "allowed an individual employment contract to

require arbitration of ADEA claims' neither the Supreme Court nor the Second Circuit has expanded

*Gilmer* . . . to cover statutory claims under statutes other than the ADEA." *Id.* at 312.

The *Gilmer* court's analysis does not support Defendants' attempts to expand the *Gilmer*

holding beyond its expressed scope. Essential to the court's holding in *Gilmer* was the determination

that the ADEA's "flexible approach" to claims resolution "suggested" that out-of-court dispute

resolution was consistent with the statutory scheme of the ADEA. *Gilmer* at 29. In arriving at that

determination, the court cited a statutory provision that permits the EEOC to pursue informal

resolution methods, and the ADEA requirement that administrative remedies be exhausted before

an employee harmed by a violation of the ADEA or Title VII can avail his or her claims in the court.

*Id.* at 28. In addition, the *Gilmer* court found that the fact that jurisdiction is granted to "any court

of competent jurisdiction" indicated an intent to avail ADEA claims to a variety of forums, including

arbitration.

In contrast to the flexible approach to claims resolution of the ADEA:

The statutory enforcement scheme [under the FLSA] grants individual employees
broad access to the courts. Section 16(b) of the Act, 29 U.S.C. 216(b), which
contains the principal enforcement provisions, permits an aggrieved employee to
bring his statutory wage and hour claim "in any Federal or State court of competent

9

Civil Cause No. 3-01CV1182-M

jurisdiction." *No exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute.*

*Barrentine* at *740. While §216(c) does vest the DOL with some authority to attempt non-judicial resolution of violations of the FLSA, such attempts will not deprive an individual employee of their right to a judicial resolution of his or her claims unless, after the Secretary of Labor ("DOL") negotiates a settlement, the employee explicitly consents to be bound by the settlement and then executes an waiver of his or her claims. *Walton v. United Consumers Club, Inc.,* 786 F.2d 303 (7th Cir. 1986) (even cashing checks issued by the employer pursuant to settlement with the DOL did not extinguish the employee's right to sue absent a signed release.) Finally, the express language of Section 216(b) does not vest jurisdiction in "any court," but only in the "Federal and State courts." That it was the intent of Congress to provide a judicial forum for FLSA claims is further evidenced by the fact that the Legislature amended the statute in 1974 to replace the "any court" language with the specific grant of jurisdiction to the "Federal and State courts" §216, Historical and Statutory Notes (Appendix G at 4).

In short, by the express language of *Gilmer*, its precedential value is limited to ADEA cases. Moreover, the statutory scheme of the FLSA, and the congressional intent behind that scheme, does not "suggest" that out-of-court dispute resolution is consistent with the FLSA, but rather makes clear that an employees injured by its violation is entitled to a judicial forum.

**B.     THE COURT MUST PROVIDE THE CLASS OF SIMILARLY SITUATED EMPLOYEES WITH NOTICE BEFORE DETERMINING WHETHER THE PLAINTIFFS MUST ARBITRATE THEIR CLAIMS**

Even if Plaintiffs are forced to take their claims to arbitration, they are entitled to do so collectively. Under *Newman* a FLSA-failure-to-pay-overtime case against the *same Defendants* as

10

Civil Cause No. 3-01CV1182-M

in this case, and which addressed the *same issues*, Judge Buchmeyer, held that notification *must* be sent out to Defendants' current and former Account Executives, before determining which, if any, of those Account Executives should be forced to arbitrate their claims. Aside from its precedential value, Judge Buchmeyer's decision collaterally estopps Defendants from relitigating that issue here.

It is well settled that federal courts are granted the discretion to apply offensive collateral estoppel in cases like this, where the same defendants have litigated and lost the same issue against different plaintiffs. *Parklane Hosiery Company v. Shore*, 439 U.S. 322 (1979); *Sun Towers v. Heckler*, 725 F.2d 315, 332 (5th Cir. 1984). The factors that a court considers in assessing whether collateral estoppel is applicable to a given case are whether: (1) the plaintiff could have been easily joined in the previous action; (2) the defendant had incentive to vigorously defend the initial lawsuit; (3) the judgment relied upon is inconsistent with other judgments in favor of the defendant; and (4) the defendant has procedural opportunities available in the subsequent lawsuit that could produce a different result. *Parklane Hosiery Company, Inc.*, 439 U.S. at 331.

The Court in this case should apply the doctrine of offensive collateral estoppel because: (1) the Plaintiffs could not have easily joined the prior suit because they were not given notice due to the parties' settlement right after the *Newman* court ordered notification; (2) the Defendants clearly had an incentive to vigorously defend the initial lawsuit because they were fighting against notification to a broad class of employees; (3) the *Newman* judgment is the only judgment that has been uncovered to date regarding this issue; (4) the procedural opportunities in this lawsuit are the same as the Defendants previously had because *Newman* was litigated in the same federal district as in this case. Therefore, all of the factors weigh in favor of this Court utilizing offensive collateral estoppel to apply Judge Buchmeyer's ruling against the Defendants in this case.

11

Civil Cause No. 3-01CV1182-M

The case of *Moss v. Crawford & Company*, 201 F.R.D. 398, 399 (W.D. Pa. 2000), is directly on point on this issue. The *Moss* case, like this case, involved claims for unpaid overtime compensation pursuant to the FLSA. The same defendant in the *Moss* case, *Crawford & Company*, was also a defendant in the case of *Sonnier v. Crawford & Company*. In the *Sonnier* case, a court had already ruled that, as a result of *Crawford & Company's* conduct in failing to post required FLSA notices, the statute of limitations for all plaintiffs was tolled. *Id*. The *Moss* court utilized non-mutual offensive collateral estoppel to apply the ruling in *Sonnier* against the same *Crawford & Company* defendant in the *Moss* case. *Id*.

The Defendants in this case have already litigated the issue of whether the Account Executives should be notified of their possible FLSA claim prior to determining whether the Account Executives are required to arbitrate their FLSA claims. After full briefing by Defendants and the *Newman* plaintiffs, the *Newman* court decided that the potential opt-in plaintiffs were similarly situated to the representative plaintiffs. *Newman v. Countrywide* briefs regarding Motion for Notification (Appendix D at 1-69). In an effort to avoid notification, Countrywide argued, as they do here, that notice was inappropriate because the majority of potential opt-in plaintiffs executed arbitration agreements. In rejecting this argument and ordering notification, Judge Buchmeyer reasoned in *Newman*:

> The mere fact that an injured party *may* be required to pursue claims in an arbitral forum rather than a judicial forum *is not a sufficient distinction to warrant denial of Plaintiffs' motion to authorize notice.* Moreover, at this juncture it is impossible to determine whether any or all of the arbitration agreements are enforceable.

12

Civil Cause No. 3-01CV1182-M

*Id.* at *2 (emphasis added).  Defendants have already had their day in court on this issue and they

lost.  Therefore, this Court should utilize offensive collateral estoppel and hold that the potential

Plaintiffs are entitled to notice before making a decision regarding the arbitrability of their claims.

### C.   DEFENDANTS' ARBITRATION AGREEMENT ATTEMPTS TO DEPRIVE PLAINTIFFS OF SUBSTANTIVE RIGHTS PROVIDED BY THE  FLSA

The Arbitration Agreement here is particularly unsuitable to compel Plaintiffs' claims to

arbitration because, in violation of *Barrentine,* it severely abridges the substantive rights granted by

the FLSA.  An employer's agreement to arbitrate should not be used to deny an employee of the

important substantive rights afforded by the FLSA.  Even the case that the Defendants primarily rely

on, *Gilmer*, provides that statutory claims, can be arbitrated only if the arbitral forum provides for

the effective vindication of Plaintiffs' statutory rights.  *See, Gilmer*, 500 U.S. at 28 ("[s]o long as the

prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral

forum, the statute will continue to serve both its remedial and deterrent function.") (quoting

*Mitsubishi*, 473 U.S. at 637, 105 S.Ct. 3346).

In denying arbitration, the *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th

Cir. 2000) Court discussed problems related to arbitrating FLSA claims:

> Even if arbitration is generally a suitable forum for resolving a particular statutory claim, the specific arbitral forum provided under an arbitration agreement must nevertheless allow for the effective vindication of that claim.  Otherwise, arbitration of the claim conflicts with the statute's purpose of both providing individual relief and generally deterring unlawful conduct through the enforcement of its provision.

*Id.* at 313.  The Arbitration Agreement in this case, like that at issue in *Floss*, does not allow

"effective vindication" of Plaintiffs' statutory claims because it requires Plaintiffs to abandon

substantive rights provided by the FLSA.  Specifically, enforcement of the arbitration agreement

13

Civil Cause No. 3-01CV1182-M

would deny Plaintiffs' their rights to proceed collectively; to an award of attorney's fees should they prevail; to an award of costs should they prevail; to an award of liquidated damages; and to obtain necessary discovery. Moreover, to the extent that the Arbitration Agreement does require Plaintiffs to abandon these substantive rights, it should be declared voidable due to the fact that Defendants intentionally and fraudulently misrepresented the nature and scope of the arbitration agreements.

### 1.    Plaintiffs' Rights to Proceed Collectively Cannot be Waived.

One of the statutory rights granted by the FLSA is the right to proceed collectively. *See*, 29 U.S.C. §216(b); *Newman*, WL 1148943 at *2. Specifically, §216(b) provides:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction *by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.*

29 U.S.C. §216(b) (emphasis added).

In an attempt to intentionally circumvent this right, Defendants mandate in their Arbitration Agreement that their employees pursue their claims with the NAF. Defendants' choice of NAF as the arbitrator is no accident. As one commentator explained, "the National Arbitration Forum (NAF), has marketed its rules to corporations in part with the assurance that its rules do not allow for class actions." Jean R. Sternlight, *As Mandatory Binding Arbitration Meets the Class Action, Will the Class Action Survive?*, 42 Wm & Mary L. Rev. 1, 14 (2000).

Rule 19 of the NAF's Code of Procedure provides for joinder only if all parties consent. *See*, NAF code of Procedure at 15-16 (Appendix B at 16-17). In other words, Plaintiffs must seek permission from the Defendants to obtain their statutory right to proceed collectively. This

14

Civil Cause No. 3-01CV1182-M

procedure is tantamount to allowing a defendant to overturn the statutory rights granted by Congress in 29 U.S.C. §216(b).

History proves that Defendants in this case will not agree to allow the Plaintiffs to proceed collectively because these same Defendants already denied similar situated plaintiffs their right to proceed collectively in a NAF arbitration.  In the matter of *Beatty v. Countrywide Home Loans*, the NAF arbitrator, as advertised, denied plaintiffs their right to proceed collectively and held that:

> Unlike the cases cited by the Parties, the [NAF] Code is neither unclear no abmiguous on the issues at hand.  This decision is dictated by the Code.

> Absent consent of the Parties (a circumstance not present here), matters can be joined only if they involve the same Parties.  Rule 19C.

> The Arbitrator has no authority to consider the Claims of unnamed individuals or entities.  Rule 19 A.

NAF Arbitrator's Order of March 27, 2001 (Appendix C at 1-2).  Absent Court intervention, the denial of Plaintiffs' right to proceed collectively is certain.

**2.      The Arbitration Agreement does not Mandate an Award of Attorney's Fees and Costs.**

Perhaps most fatal to the Arbitration Agreement is paragraph 11 which not only requires each party to bear their own costs, but also provides the arbitrator with discretion to award attorneys fees.  *See*, Arbitration Agreement (Appendix E at 1-2).  Under the FLSA, a court does not have any discretion to deny a successful employee fees and costs.  29 U.S.C. §216(b) ("the Court *shall* in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and costs of the action").  The Supreme Court in *Barrentine*, 450 U.S. at 740 n.16 emphasized the importance of the FLSA's mandatory award of attorney's fees and costs, and the non-waiveability of these statutory rights, as did the court in *Bernard*:

15

Civil Cause No. 3-01CV1182-M

[a]rbitration of FLSA claims is inadequate because the FLSA provides for liquidated damages, attorneys' fees, and costs. In general arbitrators do not have authority to award these special damages.

*Id.* at 263. Here, the *Bernard* Court's concern regarding the authority of the arbitrator to award attorneys' fees and costs is realized. *See,* NAF Code at 29 (Appendix B at 30). Under the authority of *Barrentine* and *Bernard,* Plaintiffs' statutory rights to attorneys' fees and costs cannot be waived and the Arbitration Agreement is invalid. The policy justifications underlying the FLSA's mandate of attorney's fees and costs was articulated by the Supreme Court in *Barrentine*:

> To encourage employees to enforce their FLSA rights in court, and thus further the public policies underlying the FLSA (citations omitted), Congress has permitted individual employees to sue for back wages and liquidated damages and to receive reasonable attorney's fees and costs.

*Barrentine* at 740 n.16. Defendants' Arbitration Agreement "discourages" rather than "encourages" Plaintiffs to pursue their FLSA rights because it provides that an arbitrator may, but *not must*, award attorney's fees to the prevailing party.

Moreover, arbitration agreements that include an exorbitant fee structure and place the burden for fees on the shoulders of the employees are routinely invalidated. As first explained by the court in *Cole v. Burns Int'l Security Services,* 105 F.3d 1465, 1468 (D.C. Cir. 1987), "the only way that an arbitration agreement can be lawful is if the employer assumes responsibility for the payment of the arbitrator's compensation." Shortly thereafter, the Northern District of Texas similarly held in *Jones v. Fujitsu Network Communications, Inc.,* 81 F. Supp. 2d 688, 693 (N.D. Tx. 1999), that a fee-splitting provision of an arbitration agreement was unenforceable because the costs would prohibit the plaintiff from pursuing his statutory rights. Most recently, the Supreme Court acknowledged in *Green Tree Financial Corp. - Alabama v. Randolph,* 531 U.S. 79, 90 (2000) that,

16

Civil Cause No. 3-01CV1182-M

"it may well be that the existence of large arbitration costs could preclude a litigant such as [plaintiff] from effectively vindicating her federal statutory rights in an arbitral forum". *See also Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999).

At first blush, Defendants' Arbitration Agreement which requires the employee to pay a filing fee of $125.00 and half of all hearing costs in excess of one day, may seem reasonable. *See* Defendants' Arbitration Agreement (Appendix E at 1). However, a brief review of the NAF forum fees highlights the potential astronomical arbitration costs. *See* NAF Code of Procedure at 52 (Appendix B at 53). In this case, the estimated damages for the class of potential opt-in Plaintiffs likely exceeds $5,000,000.00. Hearing fees for one day of an In-Person Hearing for a case this size are $10,000.00 for the first day and $9,000.00 for every day thereafter. *See,* NAF Code of Procedure at 52 (Appendix B at 53).

It is reasonable to assume that in this case, a collective action involving potentially hundreds of plaintiffs, the arbitration could last anywhere from two weeks to a month. Therefore, the total hearing cost could exceed $180,000.00, half of which would be charged to the Plaintiffs. *See,* Arbitration Agreement (Appendix E at 1-2). This "large arbitration cost" is exactly the kind of cost that the Supreme Court was referring to in *Green Tree* that would preclude Plaintiffs from effectively vindicating their rights. *See* Green *Tree Financial Corp. - Alabama v. Randolph*, 531 U.S. at 90. Notably, the $180,000.00 figure does not include all of the other costs associated with the arbitration hearing including attorney's fees.

The exorbitant arbitration hearing fees when coupled with the fees for pre-hearing motions and discovery practice, illuminate the truly outrageous and preclusive nature of this arbitral forum. There are fees for virtually every motion that Plaintiffs may need to file: Request to Amend the

17

Civil Cause No. 3-01CV1182-M

Pleadings $150.00; Request for Continuance $100.00; Request for a Non-Dispositive Order $250.00;

Request to Submit a Post Hearing Memorandum $4,500.00.   If the Plaintiffs in this case want the

arbitrator to rule on the Plaintiffs' motion for summary judgment, that could cost the Plaintiffs an

astonishing $12,500.00.   *See* NAF Code of Procedure at 45 and 49   (Appendix B at 46, 50).

Moreover, if discovery disputes arise, as they often do in cases of this magnitude,[3] the Plaintiffs are

required to pay $150.00 for their Request for a Discovery Order, and, if they want to have oral

argument, they will be required to pay for the In-Person Hearing which could cost as much as

$10,000.00.   *See* NAF Code of Procedure at 45 and 52 (Appendix B at 46, 53.   Clearly, the

exorbitant fee structure demanded by Defendants' chosen arbitral forum is intended to deter

Plaintiffs from filing a claim.          In stark contrast, the FLSA does not require fees for every

motion heard or paper filed and it automatically awards costs to the prevailing Plaintiffs. *See* 29

U.S.C. § 216(b).   It is without question that the payment requirements discussed above vitiate the

enforceability of the Arbitration Agreement, especially considering that there is no guarantee,

pursuant to Defendants' Arbitration Agreement, that Plaintiffs could recover any of these costs if

they prevail. *See Cole v. Burns International Security Services*, 105 F. 3d at 1468.

Even more egregious than not mandating that the Plaintiffs to receive the fees and costs that

they would be entitled to under the FLSA, is the fact that the NAF Code of Procedure dictates that:

> No party or prospective Party, before or during the arbitration of any matter eligible
> for submission under this Code, shall commence or pursue any lawsuit, against any
> other Party or prospective Party, relating to any matters subject to arbitration by
> agreement of the Parties.  Any Party commencing such a proceeding agrees to pay

---

3      *Fidelity and Deposit Co. of Maryland v. MucCulloch,* 168 F.R.D. 516, 519 (E.D. Pa. 1996) acknowledging that inevitably in document intensive litigation there are discovery disputes necessitating judicial intervention).

18

Civil Cause No. 3-01CV1182-M

and indemnify all such Parties for all expenses and costs incurred, including attorney's fees.

NAF Code of Procedure at 35 (Appendix B at 36). Therefore, if Plaintiffs are forced to arbitrate their FLSA claims, the arbitrator could attempt to require Plaintiffs to pay Defendants' attorney's fees and expenses regardless of the outcome of the arbitration. This produces an absurd result; Plaintiffs would not only lose their rights under the FLSA, but would be forced to pay fees and costs to the Defendants that unlawfully withheld overtime wages from Plaintiffs.

3.    **Defendants' Arbitration Agreement Denies Plaintiffs the Damages to which they Are Entitled Under the FLSA.**

The Fifth Circuit has acknowledged that employees should not be forced to arbitrate their FLSA claims because arbitrators may not have the authority to award liquidated damages as provided for under the FLSA. *See Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 263 (5th Cir. 1998). Section 216(b) of the FLSA provides in pertinent part: "Any employer who violates the provisions of section 206 and 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid overtime compensation as the case may be, and in an additional equal amount as liquidated damages." In *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 263 (5th Cir. 1998), the Fifth Circuit explained the prevailing law:

> The court also acknowledged that arbitration of FLSA claims is inadequate because the FLSA provides for *liquidated damages,* attorney's fees and costs. In general, arbitrators do not have authority to award these special damages.

(*Emphasis added*).   Glaringly absent from Defendant's Arbitration Agreement is a provision providing for liquidated damages -- yet another example of how the Defendant's Arbitration Agreement abridges the statutory remedies.

19

Civil Cause No. 3-01CV1182-M

**4.** **Defendants' Discovery Procedures Limit the Plaintiffs' Ability to Pursue their Claims.**

The Court in *Hooters of America, Inc. v. Philips*, 39 F.Supp. 2d 582, 621 (D.S.C. 1988) explained that "several recent cases present *Gilmer* - exceptions in which courts have refused to enforce arbitration agreements ... because of public policy concerns and frustration of legislative intent". The *Hooters* court went on to discuss the *Cole, Graham, Paladino* and *Shankle* cases as instances where different courts refused to enforce arbitration agreements which limited a plaintiffs ability to properly pursue her statutory remedies. *Id.* at 621-622; (citing, *Cole v. Burns Int'l Security Servs.*, 105 F.3d. 1465; *Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244 (9th Cir. 1994); *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998); *Shankle v. B-G Mgt. Of Colorado, Inc.*, 163 F.2d at 1235.) The *Hooters* court articulated several of the problems with *Hooters'* arbitration agreement which included severely limiting the employee's rights to discovery. *Id.* at 614. Ultimately, the court held that *Hooters'* arbitration agreement was void on public policy grounds because it did not allow the employee to effectively vindicate her statutory rights.

Similarly Defendants' Arbitration Agreement here limits the amount of discovery allowed; thereby precluding an employee from properly pursuing his FLSA claim. *See, Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F.Supp. 2d at 985, 996 (S.D. Ind. 2001) (court explained that limited discovery controlled by a biased arbitrator creates unfairness thereby, denying the employee the ability to properly pursue his FLSA claim.) For example, the Arbitration Agreement limits the Plaintiffs to three depositions; the depositions of Defendants' corporate representative are limited to four subject areas all of which need to be identified in advance; and the Agreement limits

20

Civil Cause No. 3-01CV1182-M

discovery to an aggregate of 30 requests. *See* Defendants' Mutual Agreement to Arbitrate Claims (Appendix E at 1-2). While the Arbitration Agreement does provide that a party may seek relief from these requirements where good cause is shown, there is no guarantee that an arbitrator will alter these severe limitations, and according to the fee schedule, they must pay for the privilege. In contrast, if Plaintiffs litigate their FLSA claim in federal court, they are allowed to engage in discovery in accordance with the Federal Rules of Civil Procedure and are not subjected to the harsh limitations articulated in the Arbitration Agreement. Defendants' limited discovery requirements denies the Plaintiffs the necessary procedural safeguards Plaintiffs need to vindicate their statutory requirements. *See Geiger*, 134 F.Supp. 2d at 996.

> **5.    Defendants Fraudulently Induced the Plaintiffs Into Signing the Arbitration Agreement by Representing that Plaintiffs Were Not Waiving Any of Their Substantive Rights.**

An Arbitration Agreement is subject to the same attacks to its validity as any other contract. *See Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Therefore, the same defenses that apply to contracts, like fraudulent inducement, also apply to Arbitration Agreements. *See Id.* Arbitration Agreements like contracts, can be deemed void as a result of fraudulent inducement. *Haynsworth v. Lloyd's of London,* 933 F.Supp. 1315 (S.D. Tx. 1996) (acknowledging that "an arbitration agreement may be vacated if the agreement to arbitrate was itself fraudulently induced").

In an effort to fraudulently induce the Plaintiffs to sign the Arbitration Agreement, Defendants prepared a document for its employees labeled "Questions and Answers About the Mutual Agreement to Arbitrate Claims" which affirmatively states that by signing the Agreement, the employees are not waiving their substantive rights. *See* Countrywide's Questions and Answers about the Arbitration Agreement to Arbitrate Claims (Appendix F at 1-2). Recognizing that

21

Civil Cause No. 3-01CV1182-M

employees would be concerned about waiving their substantive rights, Defendants produced the

Question and Answer document along with Defendant's Arbitration Agreement knowing full well

that it was false and misleading in that while it purported to inform Plaintiffs about the effect of the

Arbitration Agreement it failed to do so fully and accurately;  and with the purpose and intent that

the employees would rely on the explanations in the Question and Answer document. *See In re:*

*Oakwood Mobile Homes, Inc.,* 987 S.W. 2d 571, 573-73 (Tx. 1999).  Specifically, the Question and

Answer document provides:

> **18.  If I sign the Agreement, am I giving up any substantive legal rights?**
> The Agreement provides that an arbitrator, rather than a judge or jury, will decide
> issues that are not resolved through internal channels such as the Company's
> Problem Solving Process. *Otherwise, your substantive legal rights remain in tact.*

*See* (Appendix F at 2) (emphasis added).

In entering into the Arbitration Agreement the Plaintiffs, as Defendants intended them to

relied on Defendants' representation that "their substantive rights remain in tact."  Defendants'

statement, however, is false and misleading in that, as explained above, Defendants' Agreement does

in fact deprive the Plaintiffs of several of their substantive rights guaranteed by the FLSA including:

their right to liquidated damages, attorney's fees, costs, and to proceed collectively.  As a result of

Defendants' fraudulent representations, this Court should declare Defendants' Arbitration Agreement

void and allow the Plaintiffs to proceed collectively with their claims in federal court.

Civil Cause No. 3-01CV1182-M

## III. **CONCLUSION**

Consistent with the Supreme Court's holding in *Barrentine*, the statutory scheme of the FLSA, and for the reasons stated above, the Court should deny Defendants' Motion to Dismiss or Stay in its entirety. Alternatively, should the Court determine that Plaintiffs' FLSA claims can be compelled to arbitration, the Court should hold, consistent with Judge Buchmeyer's decision in *Newman*, that the potential opt-in Plaintiffs are entitled to proceed collectively; and should issue an order sufficient to assure that arbitration will not deprive Plaintiffs and the opt-in Plaintiffs of the substantive rights provided by the FLSA.

For the foregoing reasons, Defendants' Motion to Dismiss or in the Alternative for Order Staying Proceedings Pending Arbitration should be denied.

Dated this 5 day of December, 2001.

Respectfully Submitted,

By: _____

David L. Leon, TSB # 00796946
Lawrence S. Hosmer, TSB # 00796779
LEON & HOSMER, LLP
3100 Monticello Avenue, Suite 770
Dallas, Texas 75205
(214) 368-7040 telephone
(214) 368-6895 facsimile

Caryl L. Boies Esq., TSB # 02565420
Anne E. Hinds, Esq.
Sigrid McCawley, Esq.
BOIES, SCHILLER & FLEXNER, LLP
Attorneys for Plaintiffs
2435 Hollywood Boulevard
Hollywood, Florida 33020
(954) 929-1190 telephone
(954) 929-1185 facsimile

23

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of PLAINTIFFS' RESPONSE TO

DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR ORDER STAYING

PROCEEDINGS PENDING ARBITRATION was sent via U.S. Mail this ___5___ day of December,

2001 to: Ruth Ann Daniels, Esq., Gibson, McClure, Wallace & Daniels, LLP, 8080 North Central

Expressway, Suite 1300, L.B.50, Dallas, TX  75206-1838.

David Leon