

IN THE UNITED STATES DISTRICT COURT;
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN − 1 2004

CLERK, U.S. DISTRICT COURT
By _____
                Deputy

| | | |
|---|---|---|
| LISA BARNETT, on behalf of herself and all others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3-01CV-1182-N |
| | § | |
| COUNTRYWIDE CREDIT INDUSTRIES, INC., COUNTRYWIDE HOME LOANS, INC., and FULL SPECTRUM LENDING, INC. | § § § § § | |
| Defendants. | § § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

DEFENDANTS, Countrywide Credit Industries, Inc., Countrywide Home Loans, Inc., and Full Spectrum Lending, Inc. (collectively "Defendants"), file their Response to Plaintiff's Notice of Supplemental Authority in Support of Plaintiff's Motion to Compel, once again asking the Court to deny Plaintiff's Motion to Compel. In support thereof, Defendants would respectfully show the Court as follows:

**I.      Summary of the *Barnett* Proceeding**

This case involves a conditionally certified class of eight individuals, including named Plaintiff Lisa Barnett, seeking damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (specifically 29 U.S.C. § 216(b)), based on an alleged misclassification of the named Plaintiff and opt-in Plaintiffs as exempt from the overtime requirements of the statute. Plaintiff filed

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL**
**AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**                    **PAGE 1**

her Motion to Compel Defendants' Responses to Plaintiff's Request for Productions of Documents and Answers to Plaintiff's First Set of Interrogatories on May 6, 2003, one day after the Court ruled on Defendants' Motion to Designate the Members of the Conditionally Certified Class. Defendants respond that Plaintiff's Motion to Compel should be denied in its entirety, and Defendants' valid objections to discovery requests should be sustained. Since the Court has yet to rule upon Plaintiff's Motion to Compel, Plaintiff filed a "supplemental notice of authority" with the Court on May 11, 2004. The "supplemental notice" provided this Court with a ruling in an arbitration matter, *Malloy v. Countrywide Credit Indus. Inc., et. al,* NAF Proceeding No. FA0210000128070 ("*Malloy* Proceeding").

To date, Defendants have responded to Plaintiff's Request for Production and Interrogatories as follows:

(1)     On January 13, 2003, Defendants timely answered Plaintiff's First Set of Interrogatories, and responded to Plaintiff's Request for Production of Documents, and provided responsive documents. In these responses, Defendants offered to produce additional documents if Plaintiff would agree to a confidentiality order, which Plaintiff subsequently did;

(2)     On May 8, 2003, Defendants produced their First Amended Responses and Objections to Plaintiff's Request for Production of Documents, which included several hundred pages of confidential documents and other supplemental documents, and which further clarified whether responsive documents in fact existed;

(3)     On May 12, 2003, Defendants provided Plaintiff with their First Amended Answers and Objections to Plaintiff's First Set of Interrogatories, which supplemented the information previously provided by Defendants and addressed concerns raised in correspondence from counsel for Plaintiff, dated May 1, 2003; and

(4)     On May 14, 2003, Defendants produced a detailed Privilege Log listing documents withheld under claim of privilege (primarily the attorney-client privilege) (*see Defendants' Appendix to Defendants' Response to Plaintiff's Motion to Compel, pp. 51-59 (Exhibit "M")*.

Defendants have, therefore, produced both a Privilege Log and confidential documents pursuant to the Parties' Confidentiality Agreement. Furthermore, the privilege log produced in this matter is significantly different than the privilege log in the *Malloy* proceeding. Without a proper review comparing and contrasting the *Barnett* discovery request and privilege log to the *Malloy* discovery request and privilege log, Plaintiff cannot merely assert that the documents and rulings in an individual arbitration is applicable or in any way relevant to the matters pending before this Court.

## II.    Summary of the *Malloy* Arbitration Proceedings

Joel Malloy was a former class member in the *Barnett* proceeding. On October 7, 2002, Claimant brought an arbitration claim under the FLSA against Countrywide seeking to recover overtime compensation before the National Arbitration Forum ("NAF"). On December 9, 2002, Countrywide filed its response and took the position that the overtime provisions of the FLSA did not apply to Malloy because Malloy was employed in a bona fide administrative capacity. Within that Response, Countrywide asserted an affirmative good faith defense premised upon two attorney opinion letters. During the course of discovery, Countrywide provided Malloy with all of the opinions and facts that formed the basis for those two opinion letters. Furthermore, throughout the course of the *Malloy* proceeding, Countrywide affirmatively stated that after the date of the second of the two opinion letters, Countrywide relied upon nothing further in establishing its good faith defense regarding the exempt classification of its Account Executives.

On July 9, 2003, Malloy sent Countrywide his Discovery Requests. On July 25, 2003, Countrywide served their Objections and Responses to Malloy's Discovery Requests. Several of Countrywide' answers included objections based on the attorney-client privilege and/or the attorney work product doctrine. Countrywide did not provide a list or other information about any documents

withheld as a result of these objections because the NAF Code of Procedure ("NAF Code") makes no provision for such a log, and the NAF Code governs the *Malloy* proceeding proceeding. Nevertheless, the Arbitrator ruled otherwise and required the production of a privilege log. Therefore, on December 5, 2003, Countrywide served their Supplemental Objections and Responses to Malloy's Discovery Request and provided a privilege log in accordance with the Arbitrator's Order dated November 20, 2003.

The NAF Arbitrator's November 20, 2003 Order required production of a document-by-document privilege log. Many of Malloy's requests sought documents related to "Account Executives, in general." Therefore, the attorney-client privilege and the attorney work product doctrine asserted by Countrywide in connection with the voluminous correspondence and documents created by Countrywide's in-house counsel and retained outside counsel involved both past, and more importantly, current litigation *unrelated* to the *Malloy* proceeding and Malloy. The specific cases and investigations to which the attorney-client privilege apply were outlined in the categorical portion of the privilege log provided to Malloy on December 5, 2003. Nevertheless, the NAF Arbitrator ruled that Countrywide must specifically identify each privileged document generated in all other proceedings.

Creating a detailed document-by-document privilege log in the *Malloy* proceeding is an unduly burdensome, long and expensive process. Furthermore, it would not provide any additional information from which Malloy could determine the application of the privileges to his discovery requests. Therefore, Countrywide argued that granting Malloy's request for a detailed document-by-document privilege log was unnecessary. Malloy has continually sought Countrywide's internal communications between their in-house counsel and management and with their outside counsel.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**        **PAGE 4**

The only reason for Malloy's continued request for a document-by-document privilege log is to determine the applicability of the attorney-client privilege as it relates to Countrywide's good faith defense. Malloy asserts that by Countrywide denying liability, Countrywide has waived its privilege to any and all communications intertwined with the two original opinion letters. Although Malloy received all the information that formed the basis for the two opinion letters, or that otherwise related to the drafting of these letters, Malloy continues to seek documents that were created and generated *after* the opinion letters were written. Since the attorney-client privilege is the most sacrosanct privilege and Countrywide wants to continue to preserve that privilege as it relates to litigation unrelated to the *Malloy* proceedings Countrywide withdrew its assertion of the good faith defense in the Malloy arbitration. Consequently, a waiver of the affirmative good faith defense no longer puts the documents listed within categorical portions of the *Malloy* Privilege Log in issue. Since Countrywide withdrew its affirmative defense and did not disclose the documents, the privileges remain intact.

### III. Countrywide's Legal Basis for the Categorical Privilege Log was consistent with the Federal Rules and Arbitration.

#### A. *General Purpose of a Privilege Log*

The attorney-client privilege is a longstanding privilege that protects the involuntary disclosure of communications between attorneys and their clients. *Upjohn Co. v. US*, 449 U.S. 383 (1981). Its application is broad and extends to corporations. *Id.; In re Bieter Company*, 16 F.3d 929 (8th Cir. 1994). Further, communications between a client and its outside counsel are presumed to be made for purposes of obtaining legal advice within the parameters of the attorney-client privilege. *US v. Chen*, 99 F.3d 1495 (9th Cir. 1996).

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**                    **PAGE 5**

The purpose of a privilege log is to enable a party to establish application of the attorney-client privilege. *Dole v. Milonas,* 889 F.2d 885, 888 n.3 (9th Cir. 1989); *In re Grand Jury Investigation,* 974 F.2d 1068, 1070 (9th Cir. 1992). For that reason, FRCP 26 does not establish rigid guidelines concerning the information that must be disclosed in such a log. *A.I.A Holdings, S.A. v. Lehman Brothers, Inc.,* 2002 WL 31385824, at *3 (S.D.N.Y. 2002). When preparation of a document-by-document privilege log would be unduly burdensome, and the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privileges claimed are well grounded, then a privilege log that describes withheld documents in a summary fashion is appropriate. *Imperial Corp. of America v. Durkin,* 174 F.R.D. 475, 477 (S.D. Cal 1997) (relying on the Advisory Committee Notes following FRCP 26); *SEC v. Thrasher,* 1996 WL 125661, *1 (S.D.N.Y. 1996). Such a summary privilege log is also appropriate when the preparation of a detailed privilege log in and of itself "would unnecessarily intrude into and/or disclose [an attorney's] thoughts, impressions, opinions, strategies and advice regarding various aspects of . . . litigation." *Durkin,* 174 F.R.D. at 476. The evidence before the NAF Arbitrator in the *Malloy* proceeding established that both these circumstances exist in this matter. Therefore, Countrywide' production of the detailed privilege log requested by Malloy would irreparably harm Countrywide in a manner that could not be remedied by any form of appeal. Since there is no adequate remedy at the arbitration level, Countrywide withdrew its good faith defense to continue to preserve the privilege.

### B. Countrywide's Privilege Log in the Malloy Proceeding is Consistent with FRCP 26.

Countrywide properly prepared and produced a privilege log that described withheld documents on a categorical basis. *See e.g. Durkin*, 174 F.R.D. at 477; *Thrasher*, 1996 WL 125661, *1; and *United States v. Gericare Medical Supply, Inc.*, 2000 WL 33156442, *3-4 (S.D.Ala. 2000). No where in Rule 26(b)(5) is it mandated that a document-by-document privilege log is required if a party seeks to withhold documents based on privilege. *Durkin*, 174 F.R.D. at 476. In fact, the Advisory Committee Notes following Rule 26 specifically indicate that a document-by-document privilege log is *not* required in certain circumstances. *Id.* The Advisory Committee Notes state, in pertinent part:

> The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be ***unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories*** .... (emphasis added).

In appropriate circumstances, *a Court* may permit a party "to provide summaries of the [withheld] documents *by category* or otherwise limit the extent of [its] disclosure." *Id.* at 478 (emphasis in original); *Thrasher*, 1996 WL 125661, *1 (holding that "in appropriate circumstance, the court may permit the holder of the withheld documents to provide summaries of the documents by category.") The *Thrasher* Court stated that a categorical privilege log is acceptable when (1) a document-by-document log would be unduly burdensome and (2) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privileges claimed are well grounded. *Id.* at *1.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL
AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

To force Countrywide to produce a privilege log consistent with the detail and specificity requested by Malloy in his proceeding would be unduly burdensome, time consuming and expensive. See Declaration of Jim Ciccone, attached as Exhibit A and Declaration of Bryan Perkins, attached as Exhibit B. Overtime wage claims similar to the claims asserted by Malloy have been made in five Federal or State Court actions (all of which have been pled as class or collective actions) and nearly forty resultant in related arbitration proceedings. *See Exhibit A ¶ 3, and Exhibit B ¶ 4.* There has also been a Department of Labor investigation and various Department of Labor audits concerning alleged mis-classifications of Countrywide employees as exempt, or otherwise seeking recovery of overtime wages. *See Exhibit A ¶ 4 and Exhibit B ¶¶ 2-3.* A number of attorneys in Countrywide's in-house legal department, and outside counsel, have documented thoughts, impressions, opinions, strategies and advice regarding various aspects of this litigation and the Department of Labor matters. *See Exhibit A ¶¶ 5-7 and Exhibit B ¶¶ 5-9. See Exhibit A ¶ 8 and Exhibit B ¶ 10.* Furthermore, listing the details of the communication would be a futile exercise because clearly any communication between CHL and its attorneys in any of the related litigation is covered by the attorney-client privilege.

Listing all of these communications and documents would be very difficult, time consuming and costly. Preparation of a detailed document by document privilege log would irreparably injure Countrywide. The evidence before the NAF Arbitrator established that preparation of a privilege log consistent with the detail and specificity requested by Malloy is unduly burdensome, time consuming, and unreasonably expensive.

As noted above, Countrywide has been involved in several lawsuits and arbitration proceedings regarding the exempt classification of account executives under the FLSA since October

2000. All documents and communications generated or produced by Countrywide's legal department and Countrywide's outside attorneys, contain confidential information for the purpose of seeking legal advice. The communications between Countrywide's in-house and outside counsel are numerous and extensive. By way of example, in the *Butler* case alone, Countrywide's outside counsel has generated or received approximately one thousand privileged written communications directly related to Countrywide's defense. See Declaration of Tina Tran ¶ 3, attached as Exhibit C. In addition Countrywide's outside counsel maintain six volumes of correspondence files containing privileged communications. *Id.*

Any attempt to comply with Malloy's Request would be equally burdensome for Countrywide's in-house attorneys. As many as seven of Countrywide's in-house attorneys have been involved in handling Countrywide's wage and hour litigation. *See Exhibit A ¶9.* Mr. Ciccone alone spends approximately 20% of his workday on wage and hour litigation. *Id.* Because of the amount of communications generated during the administration and defense of the wage and hour litigation, Mr. Ciccone estimates that it would cost Countrywide between $50,000 and $65,000 in external and internal costs to prepare the privilege log sought by Malloy. *Id. ¶ 10.* To comply with such a demand, in light of Malloy's total claim of $105,447.00, directly contravenes the public policy considerations, that favor arbitration, namely reducing litigation and discovery costs.

Significantly, Countrywide' privilege log, when combined with the declarations of Ciccone, Perkins, and Tran, clearly and indisputably establishes that the attorney-client privilege and/or work product doctrine apply to all the documents covered in the summary portions of the *Malloy* privilege log. Accordingly, Malloy has sufficient information to address the applicability of the privilege asserted by Countrywide. *See e.g.,* FED. R. CIV. P. 26(b)(5). Providing additional information would

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**                                     **PAGE 9**

serve no purpose other than to impermissibly give Malloy insight into the pattern and timing of communications between Countrywide and their counsel, thereby revealing aspects of Countrywide' litigation strategy and unnecessarily and exorbitantly increasing the cost of the *Malloy* arbitration in relation to the value of Malloy's claim. *See e.g., Durkin*, 174 F.R.D. at 478; *United States v. Gericare Medical Supply, Inc.*, 2000 WL 33156442 (S.D. Ala. 2000),

### C.    The *Malloy* Order irreparably harms Countrywide; therefore, Countrywide withdrew its Good Faith Defense to Preserve the Privilege.

All the documents generated after the 1998 opinion letter, certainly documents created since 2000 during the course of ongoing litigation and/or investigations, are still privileged and not reasonably related to the original two opinion letters. There have not been any non-privileged actions, unrelated to the February 7, 1997 or July 16, 1998 letters, taken to investigate or confirm the propriety of the exempt classification of the account executive position or to be used as the basis for Countrywide' assertion of the good faith defense. Therefore, all documents in entry Nos. 5-8 of the *Malloy* privilege log, which are documents authored by Bryan Perkins, and documents included in entry No. 9, 10 and 11 of the *Malloy* privilege log, which are documents authored by Countrywide's in-house counsels, remain privileged because those documents were created during the course of ongoing and current litigation and/or investigations. Furthermore, Countrywide does not rely on any of these documents as the basis for their good faith defense in the *Malloy* arbitration or any other ongoing NAF proceeding or current litigation.. These documents are listed on the privilege log because they are and remain privileged, regardless of Malloy's assertion that they are related to the attorney opinion letters that predate these documents by years. The same can be said with respect to entry Nos. 24-29 of the *Malloy* privilege log, which all address current, on-going

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**                    **PAGE 10**

litigation filed by current and former employees against Countrywide. Documents privileged within the context of those litigation matters, remain privileged, especially since none of the documents are reasonably related to the creation of, or decision to rely on, the 1997 and 1998 attorney opinion letters. By way of example, the documents generated by Countrywide's counsel within the *Barnett* collective action brought before this Court cannot reasonably relate to the matters that Malloy raises in his NAF proceeding without some showing of something further; therefore, the "supplemental authority" that Plaintiff presents is irrelevant.

Again, Countrywide' privilege log, when combined with the declarations of Ciccone and Perkins, clearly and indisputably establishes that the attorney-client privilege applied to all the documents covered in the summary portions of the privilege log. *See Exhibit B, ¶¶ 3-9; Exhibit A, ¶¶ 1-7.* Accordingly, there was already sufficient information to address the applicability of the privilege asserted by Countrywide. *See e.g.,* FED. R. CIV. P. 26(b)(5). Providing additional information would serve no purpose other than to impermissibly give Malloy or any current NAF claimant insight into the pattern and timing of communications between Countrywide and their counsel, thereby revealing aspects of Countrywide's litigation strategy. *See e.g., Durkin,* 174 F.R.D. at 478; *Gericare Medical Supply, Inc.,* 2000 WL 33156442 at *4. Consequently, Countrywide' production of a detailed document by document privilege log as requested by Malloy and since requested by Barnett in this matter would serve no legitimate purpose or benefit anyone in any way, but would irreparably injure Countrywide. Since Countrywide had no other adequate remedy in the *Malloy* proceeding, Countrywide withdrew its affirmative defense to continue to preserve the privilege.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**                    **PAGE 11**

**D.    A Summary Privilege Log is Consistent with the Purposes and Benefits of Arbitration.**

The general purpose of arbitration, one recognized by the Malloy when he executed the Mutual Agreement to Arbitrate Claims ("Agreement") that led to this proceeding, is to promote efficient dispute resolution and to reduce litigation expenses.  The introductory paragraph to the Agreement states that "the Company and the Employee have entered into this Mutual Agreement to Arbitrate Claims in order to establish and gain the benefits of a speedy, impartial, and *cost-effective* dispute resolution procedure." (emphasis added.)  Malloy, and all other NAF claimants asserting similar claims that are also represented by Plaintiff's counsel, ignored the benefit of arbitration and the express terms of their Arbitration Agreement by seeking to compel Countrywide to produce an overly burdensome and unnecessary, document-by-document privilege log.

It is a well-settled premise that arbitration should be efficient and cost effective.  Limiting discovery is one means of abiding by this premise.  Courts have continually held that full discovery procedures are not available in arbitration.  *See e.g. Gilmer v. International/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (suggesting that by limiting discovery in arbitration, the stated objectives of arbitration can be achieved).[1]  When contracting parties stipulate that their disputes be submitted to arbitration, they relinquish certain benefits that are normally associated with a formal trial, one of which is a right to pretrial discovery.  *Burton v. Bush*, 614 F.2d at 390.  Discovery limitations are within the policy objectives of arbitration to promote speed, efficiency, and reduction of litigation

---

[1] *See also Folse v. Richard Wolf Medical Instruments Corp.*, 56 F.3d 603,606 (5th Cir. 1995) ("the arbitration process [is] designed to resolve disputes in a timely and cost-efficient manner"); *Burton v. Bush*, 614 F.2d 389, 390 (4th Cir. 1980) (noting that arbitrants "relinquish the right to certain procedural niceties which are normally associated with a formal trial"); *Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co.,* 20 F.R.D. 359, 361 (S.D.N.Y. 1957) (holding that parties who voluntarily agree to arbitration "must be content with its informalities").

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**                                      **PAGE 12**

expenses in resolving disputes. *Id.* at 391 (asserting that the "limited discovery provisions during arbitration . . . are keeping with the policy underpinnings of arbitration"). Although arbitration discovery procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer*, 500 U.S. at 31 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 618 (1985). Consequently, a privilege log that describes withheld documents by categories, as authorized by Fed. R. Civ. P. 26, is particularly appropriate for arbitration.

## IV.    **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendants pray the Court to deny Plaintiff's Motion to Compel in its entirety and to sustain Defendants' valid objections to Plaintiff's discovery requests, as set forth above. Defendants further pray that this Court disregard Plaintiff's submission of the supplemental authority as irrelevant to this proceeding. Defendants pray for such other and further relief to which they may be justly entitled.

Respectfully submitted,

GIBSON, McCLURE, WALLACE & DANIELS, L.L.P.

By:

Ruth Ann Daniels
State Bar No. 15109200
Bryan D. Perkins
State Bar No. 15783500
Connie K. Wilhite
State Bar No. 00792916
Aaron R. Ramirez
State Bar No. 24027644

8080 North Central Expressway
Suite 1300, L.B. 50
Dallas, Texas 75206-1838
(214) 891-8040
Fax: (214) 891-8010

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon Malloy's counsel, by certified mail, return receipt requested, on this ___ day of June, 2004, as follows:

Caryl L. Boies, Esq.
Boies, Schiller & Flexner, L.L.P.
401 East Las Olas Blvd, Suite 1200
Fort Lauderdale, Florida 33301

David L. Leon
Leon & Schulman
6500 Greenville Ave., Suite 710
Dallas, TX 75206

Karen K. Fitzgerald, Esq.
Kleiman, Lawrence, Baskind & Fitzgerald, LLP
4849 Greenville Avenue, Suite 1605
Dallas, Texas 75206

Aaron R. Ramirez

DECLARATION OF JIM CICCONE

My name is JIM CICCONE. I am over eighteen years of age and am capable of making this Declaration. The facts stated in this Declaration are within my personal knowledge or are contained in the business records of Countrywide Credit Industries, Inc. n/k/a Countrywide Financial Corporation ("CFC"), and/or its subsidiary corporations Countrywide Home Loans, Inc. ("CHL"), Countrywide Home Loans of Texas, Inc. ("CHL-Texas"), or Full Spectrum Lending, Inc. ("FSL") (collectively referred to as "Countrywide"), and are true and correct.

1.    I am employed by Countrywide as Senior Vice President and Assistant General Counsel. I office in Calabasas, California.

2.    In my position, I have knowledge of litigation brought by current and former Countrywide employees who have been classified as exempt under the Fair Labor Standards Act ("FLSA") and who are seeking overtime wages allegedly owing under the FLSA or its state counterpart(s). I also have knowledge of an investigation conducted by the Department of Labor ("DOL") concerning account executives employed by Countrywide in Plano, Texas, among other DOL investigations directed toward Countrywide.

3.    Since October 2000, Countrywide has been involved in several lawsuits and arbitration proceedings regarding the exempt classification of account executives (and other employee positions) under the Fair Labor Standards Act ("FLSA") and/or its state counterpart(s), and concerning claims that account executives and other Countrywide employees were entitled to overtime wages, including:

> (1) *Stephanie Newman, et al v. Countrywide Home Loans, Inc., et al*, (originally *Fisher at al. v. Countrywide et al.*) Civil Action No. 3-00CV-2305R, U.S. District Court, Northern District of Texas, filed October 18, 2000, and eleven (11) resultant and related arbitration actions filed with the National Arbitration Forum;

**DECLARATION OF JIM CICCONE**                                                  **PAGE 1**



EXHIBIT

A

(2) *Loy Carter, et. al. v. Countrywide Credit Industries, Inc. et. al.*, Civil Action No. 3-01CV1182-M, n/k/a; *Lisa Barnett vs. Countrywide Credit Industries, Inc et. al.*, Civil Action No. 3-01CV-1182-N, U.S. District Court, Northern District of Texas, filed in June 2001, and, as of the date of this Declaration, twenty-six (26) resultant and related arbitration actions filed with the National Arbitration Forum;

(3) *Barnett v. Countrywide Home Loans, Inc.*, Civil Action No. 3-02CV-0058-X, U.S. District Court, Northern District of Texas, filed in January 2002;

(4) *Butler v. Countrywide, et. al.*, Cause No. BC268250, Los Angeles County Superior Court, filed in February 2002; and

(5) *Jason Walker v. Countrywide Credit Industries, Inc., et. al.*, Cause No. 3:03-CV-0684-N, U.S. District Court, Northern District of Texas, filed in November 2002.

4.      In connection with the above proceedings and the DOL matters, Countrywide's in-house counsel, management, and other client representatives have had numerous status conferences and strategy sessions and have continually analyzed and investigated the exempt classification of the account executive position, and others, to prepare for actual and anticipated litigation.

5.      Furthermore, Countrywide, under my direction and supervision, or the direction and supervision of other attorneys within Countrywide's legal department (including Doug Thompson and Jodi Kruger), has retained outside counsel to represent Countrywide in various litigation matters. Outside counsel has also been retained to consult with Countrywide and to participate in status conferences, strategy sessions, internal analyses and investigations of the exempt classification of various employee positions within Countrywide, including, in particular, the account executive position.

6.      The representation of Countrywide as described above has included consulting with and defending Countrywide in various proceedings and investigations relating to alleged wage and hour violations, some of which date back before *Fisher at al. v. Countrywide et al.* was filed in October 2000. Accordingly, it has specifically included defending Countrywide in the above-listed

**DECLARATION OF JIM CICCONE**                                                   **PAGE 2**

litigation regarding the exempt classification of account executives (and other employee positions) under the FLSA and/or its state counterparts, and concerning claims that account executives and other Countrywide employees were entitled to overtime. The law firms retained by Countrywide for these purposes include Gibson McClure Wallace & Daniels, L.L.P., Howrey Simon Arnold & White, L.L.P., Orrick, Herrington & Sutcliffe L.L.P., and Paul Hastings Janofsky & Walker L.L.P.

7.    Countrywide retained all outside counsel to provide Countrywide with legal advice concerning the allegations set forth in the above-listed proceedings and DOL matters with the explicit understanding that any communications would be confidential and protected by the attorney-client privilege. Likewise, the retention of all outside counsel was premised on Countrywide's understanding that all work performed by outside counsel or their representatives was being performed to enable Countrywide to prepare for anticipated and actual litigation, thereby subjecting their work to the attorney work-product protection.

8.    All documents and communications generated or produced in connection with the above-described matters, by Countrywide's legal department, Countrywide's management or other Countrywide representatives, and Countrywide's outside attorneys and their representatives, contain confidential information for the purpose of seeking legal advice, prosecuting current litigation, and/or were produced in anticipation of litigation. Countrywide has policies, procedures and practices in place to insure that the contents of all documents and communications generated, exchanged or discussed in connection with any and all ongoing litigation or other legal matters is not disclosed to anyone other than Countrywide's in-house attorneys, Countrywide's management, or other Countrywide client representatives, or with attorneys and their representatives at the law firms retained to represent Countrywide. We ask and expect that the outside counsel we have retained take

**DECLARATION OF JIM CICCONE**                              **PAGE 3**

similar precautions.

9.      As many as seven attorneys within Countrywide have been involved in handling the above-described wage and hour matters. That work has included the creation and exchange of innumerable documents between these in house attorneys, Countrywide management, other Countrywide representatives, and attorneys and other representatives at the outside law firms retained to represent Countrywide. For example, currently, and for the last two years, I have devoted as much as twenty percent (20%) of each average work day -- a typical workweek is 8-10 hours a day, five days a week -- to some aspect of the various wage and hour matters listed above that were active at any particular time. This attention involves constant communication with other Countrywide attorneys, management and employees, as well as outside counsel retained for Countrywide's representation. As a result, I typically generate or receive from five to ten privileged documents relating to Countrywide's wage and hour matters each work day.

10.     Considering the number of wage and hour lawsuits and arbitration proceedings involving Countrywide that have been in active litigation since 2000, the privileged documents and communications generated by Countrywide's in-house attorneys and outside counsel in connection with these matters is voluminous, and compiling a document-by-document listing of all these privileged documents and communications alone would take untold hours and involve substantial expense. For example, in my opinion, it could easily take two legal assistants from one of the firms that has been retained to represent Countrywide in its wage and hour litigation, working with various Countrywide personnel, four weeks of eight to ten hour work days locating, gathering, and reviewing documents simply to begin to identify all the documents that would need to be included in a privilege log that encompasses all the privileged communications relating to all of Countrywide's wage and

**DECLARATION OF JIM CICCONE**                                    **PAGE 4**

locating, gathering, and reviewing documents simply to begin to identify all the documents that would need to be included in a privilege log that encompasses all the privileged communications relating to all of Countrywide's wage and hour matters. The identified documents would then have to be analyzed by an attorney before inclusion in a privilege log. When the cost of this work is combined with the cost to prepare and review the resulting privilege log, the combined internal and external cost to Countrywide could easily fall between $50,000.00 and $65,000.00.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 9, 2004.

JIM CICCONE

**DECLARATION OF JIM CICCONE**                    **PAGE 5**

## DECLARATION OF BRYAN D. PERKINS

My name is BRYAN D. PERKINS. I am over eighteen years of age and am capable of making this Declaration. The facts stated in this Declaration are within my personal knowledge and are true and correct.

1.      I am a partner in the law firm Gibson, McClure, Wallace and Daniels, L.L.P. Our law firm has been retained by Countrywide Credit Industries, Inc. n/k/a Countrywide Financial Corporation ("CFC"), and/or its subsidiary corporations Countrywide Home Loans, Inc. ("CHL"), Countrywide Home Loans of Texas, Inc. ("CHL-Texas"), or Full Spectrum Lending, Inc. ("FSL") (collectively referred to as "Countrywide") since the beginning of 1998 to represent Countrywide in various litigation matters. This representation has included, but is not limited to, consulting with and defending Countrywide in various proceedings and investigations relating to alleged wage and hour violations.

2.      Additionally, we were further engaged by Countrywide in October 2000 to provide assistance, and to participate in status conferences, strategy sessions, internal analyses and investigations of the exempt classification of various employee positions within Countrywide, including, in particular, the account executive position.

3.      Consequently, our firm has assisted Countrywide since October 2000 in ongoing litigation, regarding the exempt classification of account executives (and other employee positions) under the Fair Labor Standards Act ("FLSA") and/or its state counterparts, and concerning claims

**DECLARATION OF BRYAN D. PERKINS**- Page 1

EXHIBIT

B

that account executives and other Countrywide employees were entitled to overtime. During this time period, Countrywide has been involved in the following litigation matters in which current or former employees, most of whom were employed as account executives, have asserted claims under the FLSA and/or its California counterparts for unpaid overtime:

(1) *Stephanie Newman, et al v. Countrywide Home Loans, Inc., et al*, (originally *Fisher at al. v. Countrywide et al.*) Civil Action No. 3-00CV-2305R, U.S. District Court, Northern District of Texas, filed October 18, 2000, and all resultant and related arbitration actions filed with the National Arbitration Forum;

(2) *Loy Carter, et. al. v. Countrywide Credit Industries, Inc. et. al.*, Civil Action No. 3-01CV1182-M, n/k/a; *Lisa Barnett vs. Countrywide Credit Industries, Inc et. al.*, Civil Action No. 3-01CV-1182-N, U.S. District Court, Northern District of Texas, filed in June 2001, all resultant and related arbitration actions filed with the National Arbitration Forum;

(3) *Barnett v. Countrywide Home Loans, Inc.*, Civil Action No. 3-02CV-0058-X;

(4) *Butler v. Countrywide, et. al.*, Cause No. BC268250, Los Angeles County Superior Court, filed in February 2002; and,

(5) *Jason Walker v. Countrywide Credit Industries, Inc., et. al.*, Cause No. 3:03-CV-0684-N, U.S. District Court, Northern District of Texas, filed in November 2002.

4.     In my position, I have knowledge of the above litigation brought by current and former Countrywide employees who have been classified as exempt under the FLSA and who are seeking overtime wages allegedly owing under the FLSA or its California state counterparts. I also have knowledge of an investigation conducted by the Department of Labor ("DOL") concerning account executives employed by Countrywide in Plano, Texas.

5.     In each of the above proceedings and the DOL investigation, Countrywide's outside counsel (or counsel's representatives), and in-house counsel, management and other client representatives have held numerous status conferences and strategy sessions and have continually analyzed and investigated the exempt classification of the account executive position, and others,

**DECLARATION OF BRYAN D. PERKINS- Page 2**

to prepare for actual and anticipated litigation.

6.     Countrywide retained our firm to provide legal advice concerning the allegations set forth in the above proceedings with the explicit understanding that any communications would be confidential and protected by the attorney-client privilege. Likewise, the retention of our firm was premised on Countrywide's understanding that all work performed by us was done to enable Countrywide to prepare for anticipated and actual litigation, thereby subjecting our work to the attorney work-product protection.

7.     All documents and communications generated or produced in connection with the above-described matters, by Countrywide's in-house counsel or other client representatives, and our firm's attorneys or their representatives, contain confidential information for the purpose of seeking legal advice, prosecuting current litigation, and/or were produced in anticipation of litigation. Countrywide and our firm have policies and procedures in place and have taken steps to insure that the contents of such documents and communications have not been disclosed to anyone other than 'Countrywide's in-house counsel, Countrywide's management, other Countrywide client representatives, our law firm, or other outside retained counsel.

8.     A document-by-document listing of all documents and communications generated in the above proceedings and/or DOL investigation would be unduly burdensome and unreasonably expensive. Countrywide's corporate headquarters are in Calabasas, California, but the various Countrywide entities have offices located throughout most of the United States. Documents and communications regarding the above listed proceedings and/or the DOL investigation are numerous and extensive.

**DECLARATION OF BRYAN D. PERKINS**- Page 3

I declare under penalty of perjury that the foregoing is true and correct.


Executed on October 20, 2003.

BRYAN D. PERKINS


**<u>DECLARATION OF BRYAN D. PERKINS</u>- Page 4**

## DECLARATION OF TINA M. TRAN

I, Tina Tran, declare as follows:

1.   I am a member of the State Bar of California, and an associate with the law firm of Orrick, Herrington & Sutcliffe LLP and one of the attorneys representing Countrywide Home Loans, Inc. and Countrywide Financial Corporation (formerly known as Countrywide Credit Industries, Inc.), defendants in an action entitled *Butler et al v Countrywide*, Case No. BC 268250, pending in Los Angeles Superior Court. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.   The original complaint in the *Butler* case was filed on February 14, 2002. Since that time, the case has been heavily litigated and the parties have engaged in extensive discovery. For example, I have directed that the pleading files in this action be reviewed and have determined that there are eighteen volumes of pleadings files, which contain a total of 232 entries. Moreover, I have directed that the discovery files be reviewed and have determined that the parties have produced over 70,000 pages of documents in response to various discovery requests.

3.   I understand that Countrywide has been ordered to provide a document by document log of all privileged documents relating to the *Butler* case. The creation of such a log would be both unduly burdensome and expensive because of the sheer number of privileged documents that have been generated since the start of this action almost two years ago. For example, in the past five months alone, I have sent and received approximately one thousand privileged written communications in this action. Moreover, I have directed that the correspondence files in this action be reviewed and I have determined that there are six volumes of correspondence files or approximately 230 letters, of which approximately one quarter are

-1-

EXHIBIT

C

privileged communications. The vast bulk of these written communications consist of internal communications among Orrick lawyers working on the case or communications between Orrick lawyers and in-house lawyers at Countrywide.

      I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

      Executed on January 1, 2004 at Los Angeles, California

_____
                       Tina M. Tran